IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BRIAN O'HAGAN                                                                                      PETITIONER

v.                                    Case No. 5:11-CV-05178

RAY HOBBS,
Director, Arkansas Department
of Correction                                                                                      RESPONDENT

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 59) filed in this case on January 28, 2014, by the Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas. After a *de novo* review of the record, as well as Petitioner Brian O'Hagan's Objections (Doc. 60) and Respondent Ray Hobbs' Response (Doc. 61), the Court **ADOPTS IN PART AND DECLINES TO ADOPT IN PART** the Magistrate's recommendations.

The R&R sets forth the procedural history of this case in great detail and is hereby adopted by the Court. Nevertheless, for purposes of providing context for the Court's analysis of O'Hagan's Objections, a brief recitation of the most pertinent facts is in order.

### I. BACKGROUND

This case concerns O'Hagan's Amended Petition for a Writ of Habeas Corpus (Doc. 31) pursuant to 28 U.S.C. § 2254. The Amended Petition requests relief from judgments and commitment orders in two state court cases: Case No. CR-1999-166-1 ("the '99 case") and Case No. 2010-0125-1 ("the '10 case").

In the '99 case, O'Hagan pleaded guilty and was sentenced to ten years of probation on three Class "C" drug felonies. The judgment in the '99 case contained

scrivener's errors, the most consequential of which incorrectly referred to two of the counts of conviction as Class "Y" felonies. Nearly nine years after O'Hagan was sentenced in the '99 case, and just prior to completing his ten-year term of probation, he once again became involved in illegal drug activity. The Benton County Prosecutor's Office filed new charges against him (the '10 case) for possession with intent to deliver methamphetamine, possession of drug paraphernalia, and manufacturing a controlled substance. O'Hagan was also charged with two sentencing enhancements in that case. The first sentencing enhancement was described in Count Four of the Amended Criminal Information ("the Information") and was based on O'Hagan's past criminal convictions in the '99 case. *See* Ark. Code Ann. § 5-64-408 (the "habitual-offender enhancement").[1]

At the same time O'Hagan was brought up on new drug charges in the '10 case, the State also sought revocation of his probation in the '99 case. During the revocation hearing, both the prosecutor and the sentencing judge, the Honorable Robin F. Green, incorrectly referred to O'Hagan's '99 case convictions as Class "Y" felonies, again due to the scrivener's error. The sentencing range that was calculated on the revocation assumed Class "Y" felonies and thus was higher than was legally permissible. Consequently, the sentence imposed on the revocation—40 years on one count and 20 years on a second count, to run consecutively for a total of 60 years of imprisonment—was too high.

---

[1] As explained by the Magistrate, the habitual-offender enhancement is not strictly on par with the substantive drug counts charged in the Information, as the enhancement is not considered a "separate offense." *See Pardue v. State*, 215 S.W. 3d 650, 658 (Ark. 2005). This is the case even though the enhancement was listed in the Information as a separate count of conviction. As for the second enhancement, it was ultimately dismissed and, thus, is not mentioned further in this Opinion.

Respondent agrees that the scrivener's error in the '99 case judgment implicated due-process concerns during sentencing on O'Hagan's revocation. The Magistrate therefore recommended that a writ of habeas corpus issue in the '99 case, and that the revocation sentence be vacated. The Court agrees with the Magistrate's recommendation as to the '99 case and **ADOPTS** it in its entirety.

As for the '10 case, Respondent and O'Hagan disagree about whether a writ of habeas corpus should issue. As an initial matter, no one disputes that the scrivener's error from the '99 judgment impacted how O'Hagan was charged in the '10 case. There is also no doubt that the scrivener's error was relied upon by O'Hagan's attorney, the prosecutor, and the sentencing judge in considering how O'Hagan should be sentenced in the '10 case. All of the individuals involved in sentencing O'Hagan assumed that he had been previously convicted of Class "Y" felonies. Because O'Hagan had actually been convicted of Class "C" felonies, the habitual-offender enhancement charged in the '10 case was inapplicable.

Because the parties in the '10 case were operating under the false assumption that the enhancement applied, the underlying error produced the following domino effect: (1) O'Hagan's lawyer advised him as to the wrong potential sentencing ranges on each of the pending counts; (2) the plea agreement that O'Hagan signed listed the wrong sentencing ranges; (3) the prosecutor advised the sentencing court as to the wrong sentencing ranges; and (4) the sentencing judge recited and relied on the wrong sentencing ranges when handing down the sentence in the '10 case.

Coincidentally, even though the sentencing ranges were wrong, the sentence that was actually imposed fell within the correct range. O'Hagan was sentenced to 30 years'

imprisonment on Count Three, a 20-year suspended sentence on Count One, and a 10-year suspended sentence on Count Two.  The incorrect sentencing ranges for those counts—which were relied on by Judge Green at the time—were 20-80 years on Counts Three and One and 6-20 years on Count Two.  The correct sentencing ranges are 10-40 years on Counts Three and One and 3-10 years on Count Two.  Focusing only on the sentence that was imposed on Count Three—30 years' imprisonment—this number falls at the low end of the 20-80 year range Judge Green thought applied.  However, once the correct sentencing range is considered, 30 years' imprisonment is actually at the higher end of the 10-40 year range for Count Three.

In the '10 case, Respondent rests on its argument that O'Hagan should be denied a writ of habeas corpus because the term of imprisonment that was actually imposed falls within the legally correct sentencing range.  O'Hagan argues that the scrivener's error that Respondent admits tainted the '99 case also tainted the '10 case and mandates vacating both the guilty plea and sentence.  The Court is therefore faced with three options: rule in favor of Respondent and leave undisturbed O'Hagan's plea and sentence in the '10 case, which is the position the Magistrate endorses in her R&R; rule in favor of O'Hagan and vacate both the guilty plea and sentence in the '10 case; or rule in favor of O'Hagan and vacate only the sentence, leaving the guilty plea undisturbed.

In analyzing O'Hagan's Objections to the R&R, the Court will address the following issues: first, whether O'Hagan's federal claims are barred by procedural default; second, whether the sentence that was imposed in the '10 case violated O'Hagan's due-process rights; and third, whether O'Hagan's guilty plea to the charges in the '10 case was made voluntarily and knowingly.

## II.  DISCUSSION

### A.  Procedural Default

The Magistrate did not substantively discuss Respondent's argument regarding O'Hagan's procedural default, as she determined that his habeas claims could be dismissed on the merits.  However, the Court disagrees with the Magistrate's finding that O'Hagan's sentence conformed with due-process principles and that his trial counsel's ineffectiveness did not result in prejudice to his client.  Because there is merit in O'Hagan's challenge to the validity of his sentence in the '10 case, the issue of procedural default must be addressed.

Habeas relief is an extraordinary remedy, and significant barriers exist in the path of a petitioner who seeks to raise an argument that he failed to raised on direct review. *See United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998), *cert.denied*, 534 U.S. 1097 (2002).  "More specifically, a claim unraised on direct appeal is procedurally defaulted unless a petitioner can demonstrate (1) cause for the default and actual prejudice or (2) actual innocence." *Id.; see also Swedzinski v.United States*, 160 F.3d 498, 500 (8th Cir. 1998) (finding procedural default as to an issue that was raised for the first time in a § 2255 motion, when petitioner did not raise the issue at trial or on direct appeal), *cert. denied*, 528 U.S. 846 (1999).

O'Hagan agrees he did not appeal the trial court's denial of his motion for postconviction relief, which he timely filed, *pro se*, pursuant to Arkansas Rule of Criminal Procedure 37.2.  However, considering all the attendant circumstances surrounding his back-to-back convictions in the '99 and '10 cases, the Court finds that O'Hagan lacked a

meaningful opportunity to raise his due-process and ineffective-assistance claims at the state court level with respect to his '10 sentence. The scrivener's error in the '99 judgment clearly resulted in an illegal sentence in subsequent revocation proceedings, a fact Respondent concedes. Furthermore, Respondent also agrees that the Court should excuse any procedural default with respect to the '99 revocation case. *See* Doc. 12. But for some reason, Respondent does not go so far as to concede that cause and prejudice exist to excuse any procedural default in the '10 case. Respondent's explanation of its apparently contradictory position is as follows:

> O'Hagan asserts that it is inconsistent for Respondent to assert default as to the guilty plea [in the '10 case] but waive default and concede error in the ['99] revocation case because according to O'Hagan, in both cases the asserted error rests on the faulty 2001 ['99 case] judgment. The error asserted in the revocation, however, is a direct result of the faulty judgment: because of that judgment O'Hagan's probation was revoked on felonies for which he never had been convicted . . . In the guilty plea case [the '10 case], none of that is the case."

(Doc. 52, p. 4 n. 2).

The Court disagrees with Respondent's position. It is impossible to dispute that the scrivener's error in the '99 judgment was the direct cause of the sentencing court's misapplication of an improper sentencing enhancement in the '10 case. Moreover, a careful review of the state court record reveals that after O'Hagan was sentenced in the '10 case, he filed a "Motion to Retract Plea of Guilty and Enter a Plea of Not Guilty." (Doc. 1-1, p. 1), which was construed by Judge Green as a petition for relief pursuant to Arkansas Rule of Criminal Procedure 37.2. In this Motion, O'Hagan asserted that his counsel misinformed him as to his appeal rights and told him he could not appeal or challenge his sentence in the '99 case. He then opined that his 30-year sentence in the

'10 case was "a harsh sentence" that "was based on prior class 'Y' felony convictions that do not exist." *Id.* at p. 2.  O'Hagan's Motion vividly demonstrates his attempt to explain to Judge Green how the "harsh sentence" in the '10 case must be a mistake:

> The record will clearly show, from Feb. 13, 2001, that the petitioner only plead guilty to (2) possion [sic] charges and one paraphenalia [sic] charge, (3) class "C" felonies . . . the prosecutor counted out 7 prior class "Y" felonies that do not exist, getting no objection from opposing attorney. . . I, Brian O'Hagan, would have never plead guilty to such a harsh [sentence in the '10 case] if I would have had any knowledge of my right to appeal the illegal sentence of 60 years [in the '99 revocation case], or known I could challenge the convictions that are not of proper record.

*Id.*

Judge Green denied O'Hagan's Rule 37.2 Motion, and he did not appeal its denial. The Court now construes the Motion as a challenge to the 30-year sentence O'Hagan received in the '10 case and the 60-year sentence he received in the '99 revocation case. Importantly, nowhere in the Motion did O'Hagan assert his actual innocence of the charges against him.

In light of the above procedural history, the Court finds that O'Hagan has demonstrated adequate cause for his default in the '10 case so as to overcome the procedural due-process bar.  O'Hagan has established that systemic barriers at the state court level prevented him from being heard effectively in Rule 37.2 proceedings and in attempting to correct his sentence in the '10 case.

In addition, O'Hagan has established that he suffered actual prejudice as a result of the State's reliance on the erroneous '99 case judgment in the '10 case.  Substantive due process concerns are legitimately at issue here, as the sentence in the '10 case was informed by the judge's improper application of a sentencing enhancement that resulted

in an incorrect calculation of the appropriate sentencing range for each count of conviction. Moreover, O'Hagan never had the benefit of appellate counsel in establishing his claims, a circumstance which provides additional good cause to overcome the procedural bar. *See Martinez v. Ryan*, 132 S.Ct. 1309, 1320 (2012) ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.").

With the procedural default hurdle cleared, the Court now turns to the merits of O'Hagan's claims.

### B.  Propriety of the '10 Case Sentence

O'Hagan contends that his sentence in the '10 case should be vacated because he suffered a violation of his due-process rights and had ineffective assistance of counsel at his sentencing hearing.  Under the two-part test announced in *Strickland v. Washington* for determining the validity of an ineffective assistance of counsel claim, a defendant must show that counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (citing *Strickland*, 466 U.S. 668 (1984)).

The *Strickland* test is satisfied here.  O'Hagan's counsel's representation fell below an objective standard of reasonableness.  Counsel did not thoroughly review O'Hagan's file in the '99 case to verify that the sentencing enhancement that was charged in the '10

case was applicable.  Counsel did not investigate the likelihood that the sentencing enhancement could be erroneous, especially in light of the fact that O'Hagan received a sentence of probation on the '99 charges—not imprisonment—and O'Hagan himself stated during the sentencing hearing that his prior convictions had been Class "C" felonies, not Class "Y."

O'Hagan also suffered prejudice due to his counsel's ineffectiveness.  The Court is convinced that, but for his counsel's errors, the result of the sentencing proceeding in the '10 case would have been different.  Judge Green considered a sentencing range on each count that was substantially higher than was possible, considering O'Hagan's actual criminal history.  The Court cannot determine if Judge Green would have sentenced O'Hagan to the same sentence or to a lower sentence if she had known that the sentencing range she was relying on was incorrect. The 30-year sentence O'Hagan received on Count Three was at the low end of the sentencing range relied on by the judge.  By contrast, that same 30-year term of imprisonment would have fallen at the higher end of the correct sentencing range.

By the Court's estimation, O'Hagan was also prejudiced by the fact that the sentence in the '10 case came on the heels of, and was inextricably tied to, an illegal sentence in the '99 revocation case.  As the Magistrate observed in her R&R, O'Hagan's attorney failed to "properly advise Petitioner as to whether he should challenge his revocation sentence or plead guilty to the 2010 case with a negotiated concurrent prison term but 20 years of a concurrent suspended sentence hanging over his head." (Doc. 59, p. 14).

Considering all of this, justice requires that O'Hagan be resentenced in the '10 case. The state court judge must be afforded the opportunity to reconsider both of O'Hagan's sentences in the '99 and '10 cases with the benefit of full, complete, and correct information.

### C. Plea Agreement and Guilty Plea

O'Hagan urges the Court to allow him to withdraw his guilty plea to the three drug-related counts of conviction in the '10 case. He argues that his due-process rights were violated because his plea was not voluntarily and knowingly made. He contends his conviction should be vacated because his plea agreement contained material misinformation, as it erroneously contemplated the application of the habitual-offender enhancement.

To be valid, a guilty plea must be both voluntary and knowing. *McCarthy v. United States,* 394 U.S. 459, 466 (1969). Before entering judgment on a guilty plea, the court must make "such inquiry as shall satisfy it that there is a factual basis for the plea." *Walker v. United States*, 115 F.3d 603, 605 (8th Cir. 1997) (citing Fed. R. Crim. P. 11(f)).

O'Hagan's counsel's error and bad advice regarding the application of the habitual-offender enhancement did not necessarily render O'Hagan's guilty plea involuntary because O'Hagan clearly and unequivocally admitted the factual predicate to all three substantive counts of conviction. As the Magistrate observed in the R&R, the plea hearing transcript establishes that O'Hagan acknowledged to Judge Green that he understood that he was not required to plead guilty, that he had a right to a trial by jury, and that he was willing to waive these rights. When the judge inquired if the facts as stated by the

prosecutor were correct, O'Hagan responded, "You're asking me if I made methamphetamine and sold methamphetamine?" and then stated, ""That's what I'm pleading guilty to here." (Doc. 19-1, p. 5). O'Hagan also agreed that he had been in possession with the intent to deliver methamphetamine, had possessed drug paraphernalia, and had prior convictions. *Id.*

Any hesitation, doubt, or concern O'Hagan expressed during the sentencing hearing was focused on his sentence, specifically, the length of imprisonment he would receive—not the fact of his guilt. *See id.* at p. 8 ("I was on probation for 10 years for . . . three Class C felonies, and then on my revocation I was found guilty and sentenced on two Class Y felonies and I just want to make sure that doesn't happen again.").

In the face of O'Hagan's factual admissions at the plea hearing, the Court cannot find that O'Hagan's guilty plea must necessarily be vacated. Despite this conclusion, the Court also finds that the error in the '99 judgment thoroughly tainted the negotiations that produced the plea agreement and, thus, warrants an appropriate remedy. In the Court's estimation, the proper course of action is for the state trial court to permit O'Hagan to withdraw his plea agreement if he so chooses. Next, the state court must allow O'Hagan the opportunity to file a motion to withdraw his guilty plea. A hearing should then be conducted by the state court in order to allow the parties to develop a factual record on the issue of whether O'Hagan should be permitted to withdraw his guilty plea. It is for the trial court, in its sound discretion, to then decide whether O'Hagan knowingly and voluntarily waived his constitutional rights and admitted guilt—given the scrivener's error which tainted the plea negotiations and resulting plea agreement.

### III.  CONCLUSION

For the reasons stated above, **IT IS THEREFORE ORDERED** that as to Case No. CR-1999-166-1, the Magistrate's reasoning and recommendation are **ADOPTED**, the sentence imposed is **VACATED**, and the writ of habeas corpus is **GRANTED** and **WILL ISSUE**, unless within 120 days of entry of this Order, the State of Arkansas initiates new revocation proceedings against O'Hagan in Benton County Circuit Court.

As to Case No. CR-2010-125-1, the Court **DECLINES IN PART** to adopt the Magistrate's reasoning and recommendation and instead makes the following findings: (1) O'Hagan's sentence of 30 years' imprisonment on Count Three, a 20-year suspended sentence on Count One, and a 10-year suspended sentence on Count Two violated the Due Process Clause of the Constitution of the United States; (2) the scrivener's error in the '99 case so permeated and tainted the negotiation of the plea agreement that Due Process requires that O'Hagan be permitted to withdraw the plea agreement from consideration; and (3) the scrivener's error in the '99 case also may have tainted the guilty plea, despite O'Hagan's frank admissions to the predicate facts, such that Due Process and fundamental fairness dictate that he be reasonably heard on a Motion to Withdraw his guilty plea.

Accordingly, as to Case No. CR-2010-125-1, the writ of habeas corpus is **GRANTED TO THE EXTENT THAT** the state trial court is directed to conduct further proceedings consistent with this Order, to include: (1) **VACATING** O'Hagan's sentence in the '10 case; (2) **PERMITTING** O'Hagan to withdraw his plea agreement from consideration; (3) **CONDUCTING** a hearing to determine, in light of the taint of the scrivener's error, whether

O'Hagan knowingly and voluntarily waived his constitutional rights in admitting his guilt; and

(4) **RESENTENCING** O'Hagan in a manner consistent with Due Process.

**IT IS FURTHER ORDERED** that the state court shall appoint counsel to represent O'Hagan in the proceedings described above.

**IT IS FURTHER ORDERED** that O'Hagan's counsel in the instant matter shall file a status report in this Court within 120 days of the date of this Order, describing the actions taken by the state court in response to this Order.

**IT IS SO ORDERED** this 10th day of September, 2014.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE